# EXHIBIT A

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STALLION OILFIELD SERVICES LTD., *et al.*,[1] | ) | Case No. 09-13562 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## ORDER AUTHORIZING STALLION TO EMPLOY AND RETAIN MILLER BUCKFIRE & CO., LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO STALLION *NUNC PRO TUNC* TO THE PETITION DATE

Upon consideration of the application (the "Application"), dated October 30, 2009, of Stallion[2] for entry of an order (this "Order") authorizing Stallion to employ and retain Miller Buckfire as its financial advisor and investment banker effective *nunc pro tunc* to the Petition Date, pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rule 2014-1; and upon the Greene Declaration, the Court having reviewed the Application and the Greene Declaration, and the Court being satisfied based on the representations made in the Application and the Greene Declaration that (a) Miller Buckfire does not hold or represent an interest adverse to Stallion's estates and (b) Miller Buckfire is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code; it appearing that the relief requested in the

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: Stallion Oilfield Services Ltd. (2101); Central Industries, Inc. (3594); Salty's Disposal Wells, LP (0682); Salty's Manufacturing, Ltd. (0679); Stallion Acquisition, LLC (2495); Stallion Heavy Haulers, LP (3203); Stallion Interests, LLC (4416); Stallion Offshore Quarters, Inc. (7410); Stallion Oilfield Construction, LLC (1600); Stallion Oilfield Finance Corp. (7114); Stallion Oilfield Holdings GP, LLC (7889); Stallion Oilfield Holdings, Ltd. (7890); Stallion Oilfield Services, Inc. (8455); Stallion Production Services, LP (2038); Stallion Production, LLC (2040); Stallion Rockies Ltd. (9473); Stallion Solids Control, Inc. (4425); and Stallion Stables, LLC (7522). The location of Stallion's corporate headquarters and the service address for its affiliates is: 950 Corbindale Road, Suite 300, Houston, Texas 77024.

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Application.

Application is in the best interests of the Stallion estates, its creditors, and other parties in interest; it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b); it appearing that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; due and proper notice of the Application having been provided; it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1. The Application is granted as set forth herein.

2. Stallion is authorized pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Bankruptcy Rule 2014-1(b) to employ and retain Miller Buckfire as its financial advisor and investment banker in accordance with the terms and conditions set forth in the Engagement Letter attached hereto as **Exhibit 1** as modified by this Order, effective *nunc pro tunc* to the Petition Date, and to pay fees to Miller Buckfire on the terms and at the times specified in the Engagement Letter.

3. Miller Buckfire shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable orders of the Court.

4. Notwithstanding the prior paragraph, the fees payable to Miller Buckfire pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in

section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code.

5. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, Miller Buckfire and its professionals (a) shall only be required to maintain time records for services rendered postpetition in half-hour increments, and (b) shall not be required to provide or conform to any schedule of hourly rates.

6. The Indemnification Provisions of the Engagement Letter are approved subject to the following modifications:

   i. Subject to the provisions of subparagraphs (c) and (d) below, Stallion is authorized to Indemnify, and shall indemnify, Miller Buckfire, in accordance with the Engagement Letter and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with Miller Buckfire's performance of the services described in the Engagement Letter;

   ii. Miller Buckfire shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services other than the services provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefore are approved by the Court;

   iii. Notwithstanding anything to the contrary in the Engagement Letter, Stallion shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which Stallion alleges the breach of Miller Buckfire's contractual obligations under the Engagement Letter unless the Court determined that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order;

3

iv. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, Miller Buckfire believes that it is entitled to the payment of any amounts by Stallion on account of Stallion's indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Miller Buckfire must file an application before this Court, and Stallion may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Stallion's obligation to indemnify Miller Buckfire; and

v. The Engagement Letter is amended to delete the proviso to the first sentence of the third paragraph of the Indemnification Provisions.

7. Notwithstanding any provisions of the Engagement Letter to the contrary, to the extent this Court has jurisdiction over any matter arising out of or related to the Engagement Letter, such matter shall be heard in this Court.

8. To the extent this Order is inconsistent with any prior order or pleading with respect to the Application in these cases or the Engagement Letter, the terms of this Order shall govern.

9. Notwithstanding the possible applicability of Rules 6004(h), 7062, and 9014 of the Bankruptcy Rules, or otherwise, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

10. This Court shall retain jurisdiction over any matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2009  
Wilmington, Delaware

_____  
THE HONORABLE BRENDAN L. SHANNON  
UNITED STATES BANKRUPTCY JUDGE

K&E 15821941.1

# EXHIBIT 1

**Engagement Letter**

March 10, 2009
Amended as of April 13, 2009

Stallion Oilfield Services Ltd.
950 Corbindale, Suite 300
Houston, Texas 77024

Attention:   Craig Johnson
             Chief Executive Officer

Dear Mr. Johnson:

This letter agreement confirms the terms under which Stallion Oilfield Services Ltd. (the "Company") has engaged Miller Buckfire & Co., LLC ("Miller Buckfire"), as financial advisor, in connection with a possible Amendment, Restructuring and/or Financing (each defined below) and with respect to such other financial matters as to which the Company and Miller Buckfire may agree in writing during the term of this engagement. For purposes hereof, the term "Company" includes subsidiaries of the Company and any entity that the Company or its subsidiaries may form or invest in to consummate an Amendment, Restructuring and/or Financing, and shall also include any successor to or assignee of all or a portion of the assets and/or businesses of the Company. If appropriate in connection with performing its services for the Company hereunder, Miller Buckfire may utilize the services of one or more of its affiliates, in which case references herein to Miller Buckfire shall include such affiliates.

1.  Miller Buckfire, as financial advisor to the Company, will perform the following financial advisory and investment banking services:

    a.  General Financial Advisory and Investment Banking Services. Miller Buckfire will:

        i.   to the extent it deems necessary, appropriate and feasible, familiarize itself with the business, operations, properties, financial condition and prospects of the Company;

        ii.  if the Company determines to undertake an Amendment, Restructuring and/or Financing, advise and assist the Company in structuring and effecting the financial aspects of such a transaction; and

    b.  Restructuring Services. If the Company pursues a Restructuring, Miller Buckfire will:

        i.   provide financial advice and assistance to the Company in developing and seeking approval of a Restructuring plan (as the same may be modified from time to time, a "Plan"), which may be

a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et.seq. (the "Bankruptcy Code");

ii. if requested by the Company, in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under the Plan;

iii. if requested by the Company, assist the Company and/or participate in negotiations with entities or groups affected by the Plan;

iv. attend meetings of the Company's Board of Directors and render advice with respect to matters on which Miller Buckfire has been engaged to advise the Company on;

v. if requested by the Company, participate in hearings before the bankruptcy court with respect to the matters upon which Miller Buckfire has provided advice, including, as relevant, coordinating with the Company's counsel with respect to testimony in connection therewith; and

vi. provide the Company with other financial restructuring advice.

For purposes of this agreement, the term "Restructuring" shall mean any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's preferred equity and/or debt securities and/or other long term indebtedness, obligations or liabilities (including preferred stock, unfunded pension and retiree medical liabilities, partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including pursuant to a repurchase or an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorizations, or the disposition to one or more third parties in one or a series of related transactions of (x) all or a significant portion of the equity securities of the Company by the security holders of the Company or (y) all or a significant portion of the assets (including the assignment of any executory contracts) or businesses of the Company or its subsidiaries, in either case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction; provided, however, and for the avoidance of doubt, any Amendment (as defined below) shall not in and of itself be considered a Restructuring.

c. <u>Financing Services</u>. If the Company pursues a Financing, Miller Buckfire will:

  i. provide financial advice and assistance to the Company in structuring and effecting a Financing, identify potential Investors (as defined below) and, at the Company's request, contact such Investors;

  ii. if Miller Buckfire and the Company deem it advisable, assist the Company in developing and preparing a memorandum (with any amendments or supplements thereto, the "<u>Financing Offering Memorandum</u>") to be used in soliciting potential Investors, it being agreed that (A) the Financing Offering Memorandum shall be based entirely upon information supplied by the Company, (B) the Company shall be solely responsible for the accuracy and completeness of the Financing Offering Memorandum, and (C) other than as contemplated by this subparagraph (c)(ii), the Financing Offering Memorandum shall not be used, reproduced, disseminated, quoted or referred to at any time in any way, except with Miller Buckfire's prior written consent; and

  iii. if requested by the Company, assist the Company and/or participate in negotiations with potential Investors.

For purposes of this agreement, the term "<u>Financing</u>" shall mean a private issuance, sale or placement of the equity, equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors except to the extent issued to existing security holders of the Company in exchange for their existing securities, or any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code or a rights offering (each such lender or investor, an "<u>Investor</u>").

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Miller Buckfire to act in any capacity or to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing.

In rendering its services to the Company hereunder, Miller Buckfire is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Amendment, Restructuring, and/or Financing or other transaction. The Company agrees that Miller Buckfire shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company and shall have no responsibility for

designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

In order to coordinate effectively the Company's and Miller Buckfire's activities to effect an Amendment, Restructuring and/or Financing, the Company agrees to keep Miller Buckfire reasonably informed of any discussions, negotiations or inquiries regarding a possible Amendment, Restructuring and/or Financing.

The Company shall make available to Miller Buckfire all information concerning the business, assets, operations, financial condition and prospects of the Company that Miller Buckfire reasonably requests in connection with the services to be performed for the Company hereunder and shall provide Miller Buckfire with reasonable access to the Company's officers, directors, employees, independent accountants and other advisors and agents as Miller Buckfire shall deem appropriate. The Company represents that all information furnished by it or on its behalf to Miller Buckfire (including information contained in any Financing Offering Memorandum) will be accurate and complete in all material respects. The Company recognizes and confirms that in advising the Company and completing its engagement hereunder, Miller Buckfire will be using and relying on publicly available information and on data, material and other information furnished to Miller Buckfire by the Company and other parties. It is understood that in performing under this engagement Miller Buckfire may assume and rely upon the accuracy and completeness of, and is not assuming any responsibility for independent verification of, such publicly available information and the other information so furnished.

2. Miller Buckfire's compensation for services rendered under this agreement will consist of the following cash fees:

   a. A monthly financial advisory fee of $175,000 (the "Monthly Advisory Fee"), which shall be due and paid by the Company beginning upon the execution of this agreement and thereafter on each monthly anniversary thereof during the term of this engagement; provided, however, that one half of each Monthly Fee ($87,500) paid in respect of any months following the fifth month of this engagement shall be credited (without duplication) against any Restructuring Transaction Fee.

   b. If the Company enters into a covenant amendment to its Unsecured Bridge Term Loan or existing senior credit facility on or prior to December 31, 2009 ("Amendment"), an Amendment fee of $2,000,000 (the "Amendment Fee"), which shall be due and paid by the Company upon the execution and delivery thereof; provided, however, that one half of any such Amendment Fee ($1,000,000) shall be credited against any Restructuring Transaction Fee.

c.     If at any time during the term of this engagement or within the twelve full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (x) any Restructuring is consummated or (y)(1) an agreement in principle, definitive agreement or Plan to effect a Restructuring is entered into and (2) concurrently therewith or at any time during the Fee Period or within the six full months following the expiration of the Fee Period (such six month period being known as the "Tail Period"), any Restructuring is consummated, Miller Buckfire shall be entitled to receive a transaction fee (a "Restructuring Transaction Fee"), contingent upon the consummation of a Restructuring and payable at the closing thereof, equal to $6,000,000.

            Notwithstanding anything to the contrary in this agreement, in connection with any Restructuring that is intended to be effected, in whole or in part, as a prepackaged, partial prepackaged or prearranged plan of reorganization anticipated to involve the solicitation of acceptances of such plan in compliance with the Bankruptcy Code, by or on behalf of the Company, from holders of any class of the Company's securities, indebtedness or obligations (a "Prepackaged Plan") the Restructuring Transaction Fee shall be payable (x) (i) in the case of a Prepackaged Plan that takes the form of prepackaged or partial prepackaged plan of reorganization, 50% upon receipt of votes from the Company's creditors necessary to confirm such Prepackaged Plan or (ii) in the case of a Prepackaged Plan that takes the form of a prearranged plan of reorganization (a "Prearranged Plan"),[1] 50% upon obtaining indications of support from the Company's creditors that in the good faith judgment of the Board of Directors of the Company are sufficient to justify filing such Prepackaged Plan, and (y) the balance shall be payable upon consummation of such Restructuring and the Company's emergence from a chapter 11 proceeding; provided, that in the event that Miller Buckfire is paid a Restructuring Transaction Fee in connection with a Prepackaged or Prearranged Plan and such Plan (as the same may be amended or modified from time to time) is not consummated, Miller Buckfire shall return any such Restructuring Transaction Fee to the Company.

d.     If at any time during the Fee Period, the Company (x) consummates any Financing or (y)(1) the Company receives and accepts written commitments for one or more Financings (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment) and (2) concurrently therewith or at any time thereafter (including following the

---

[1] As used in this Agreement, the term "Prearranged" means negotiations concerning a plan of reorganization have been completed and a requisite number creditors that are to be solicited under such plan of reorganization pursuant to section 1126 of the Bankruptcy Code have executed appropriate lock-up agreements with respect to the proposed plan of reorganization.

expiration of the Fee Period) any Financing is consummated, the Company will pay to Miller Buckfire the following (either as underwriting discounts, placement fees or other compensation):

i. 1% of the gross proceeds of any indebtedness issued that is secured by a first lien;

ii. 3% of the gross proceeds of any indebtedness issued that (x) is secured by a second or more junior lien, (y) is unsecured and/or (z) is subordinated;

iii. 5% of the gross proceeds of any equity or equity-linked securities or obligations issued; and

iv. with respect to any other securities or indebtedness issued, such underwriting discounts, placement fees or other compensation as shall be customary under the circumstances and mutually agreed by the Company and Miller Buckfire;

provided that no Financing fee shall be payable in respect of Financing proceeds to the extent actually funded by Riverstone Holdings, LLC or Wayzata Investment Partners, LLC, and their respective affiliates.

It is understood and agreed that if the proceeds of any such Financing are to be funded in more than one stage, the aggregate proceeds to be raised in all stages of such Financing shall be deemed to have been received, and Miller Buckfire shall be entitled to the applicable compensation hereunder calculated based on such aggregate proceeds, upon the closing date of the first stage thereof.

One half of the amount of any Financing fees paid to Miller Buckfire pursuant to paragraph 2(d)(i) through (iv) above will be credited against any Restructuring Transaction Fee payable to Miller Buckfire.

Notwithstanding anything to the contrary in this subparagraph 2(d), if at any time during the Fee Period, the Company obtains a written commitment for a debtor-in-possession Financing, Miller Buckfire shall be entitled to receive a financing fee of 1.00% of the aggregate amount of such commitment, which fee shall be due and payable at the signing of such commitment and which fee shall be the sole Financing fee payable to Miller Buckfire on account of such debtor-in-possession Financing. In connection with any Financing undertaken within the Fee Period, Miller Buckfire shall be offered the right of first refusal to act as lead arranger, lead managing underwriter or exclusive placement agent, as the case may be. In the event that Miller Buckfire does act for the Company in any of the foregoing or similar capacities, then if requested by Miller Buckfire, the Company and Miller Buckfire shall enter into a separate agreement or

other appropriate documentation for such transaction, containing customary representations, warranties, covenants, conditions and indemnities, and providing for the underwriting discounts or placement fees, as the case may be, set forth above; provided that in the absence of any such agreement, the terms of this agreement (including the Indemnification Provisions referred to below) shall govern. In no event, however, shall the economic terms of any such agreement be any less favorable to Miller Buckfire than the economic terms afforded to any other arranger, underwriter, initial purchaser or placement agent, if any, participating in any such Financing.

Each party hereto acknowledges and agrees that Miller Buckfire's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of Miller Buckfire's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of Miller Buckfire's services hereunder could not be measured merely by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues with Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards. In addition, the Company and Miller Buckfire acknowledge and agree that more than one fee may be payable to Miller Buckfire under subparagraphs 2(b), 2(c) and/or 2(d) hereof in connection with any single transaction or a series of transactions, and in each case, each such fee shall be paid to Miller Buckfire.

3.  In addition to any fees payable by the Company to Miller Buckfire hereunder, the Company shall, whether or not any transaction contemplated by this agreement shall be proposed or consummated, reimburse Miller Buckfire on a monthly basis for its travel and other reasonable and documented out-of-pocket expenses incurred in connection with, or arising out of Miller Buckfire's activities under or contemplated by this engagement or in the enforcement of Miller Buckfire's rights hereunder (including all fees, disbursements and other charges of counsel to be retained by Miller Buckfire, and of other consultants and advisors retained by Miller Buckfire solely to the extent the Company's consents in writing). The Company shall also reimburse Miller Buckfire, at such times as Miller Buckfire shall request, for any sales, use or similar taxes (including additions to such taxes,

if any) arising in connection with any matter referred to or contemplated by, this engagement. Such reimbursements shall be made promptly upon submission by Miller Buckfire of statements for such expenses.

4. The Company agrees to indemnify Miller Buckfire and certain related persons in accordance with the indemnification provisions ("Indemnification Provisions") attached to this agreement. Such Indemnification Provisions are an integral part of this agreement, and the terms thereof are incorporated by reference herein. Such Indemnification Provisions shall survive any termination or completion of Miller Buckfire's engagement hereunder.

5. The Company agrees that none of Miller Buckfire, its affiliates or their respective directors, officers, members, managers, agents, employees and controlling persons, or any of their respective successors or assigns ("Covered Persons") shall have any liability to the Company or any person asserting claims on behalf of the Company or in the Company's right for or in connection with this engagement or any transactions or conduct in connection therewith except for losses, claims, damages, liabilities or expenses incurred by the Company which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of such Covered Person; provided, however, that in no event shall the Covered Persons' aggregate liability to the Company or any person asserting claims on behalf of the Company or in the Company's right exceed the fees Miller Buckfire actually receives from the Company pursuant to its engagement hereunder, unless there is a final judicial determination of gross negligence or willful misconduct specified in this sentence.

6. This agreement and Miller Buckfire's engagement hereunder may be terminated by either the Company or Miller Buckfire at any time, upon prior written notice thereof to the other party; provided, however, that (a) termination of Miller Buckfire's engagement hereunder shall not affect the Company's continuing obligation to indemnify Miller Buckfire and certain related persons as provided for in this agreement, and its continuing obligations and agreements under paragraphs 5 and 7 hereof, (b) notwithstanding any such termination, Miller Buckfire shall be entitled to the full fees earned in the amounts and at the times provided for in paragraph 2 hereof, except in the case of a termination by the Company for "Cause", in which case Miller Buckfire will only be entitled to receive the fees as described in subparagraphs 2(a) through (d) of this Agreement to the extent such fees have already been earned by Miller Buckfire through performance of services hereunder and are due and payable at or prior to the time of such termination but are unpaid, and (c) any termination of Miller Buckfire's engagement hereunder shall not affect the Company's obligation to reimburse expenses accruing prior to such termination to the extent provided in paragraph 3 hereof As used herein, "Cause" shall mean the gross negligence, willful misconduct or bad faith of Miller Buckfire relating to the Company or the performance of its obligations hereunder or material breach of by Miller Buckfire of its obligations hereunder.

7. Miller Buckfire has been retained under this agreement as an independent contractor with no fiduciary or agency relationship to the Company or to any other party. The advice (oral or written) rendered by Miller Buckfire pursuant to this agreement is intended solely for the benefit and use of the Board of Directors of the Company in considering the matters to which this agreement relates, and the Company agrees that such advice may not be relied upon by any other person or entity, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to Miller Buckfire be made by the Company, without the prior written consent of Miller Buckfire.

8. The Company agrees that after consummation of an Amendment, Restructuring and/or Financing, Miller Buckfire shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder; provided that Miller Buckfire will submit a copy of any such advertisement to the Company for its prior approval, which approval shall not be unreasonably withheld or delayed.

9. This agreement shall be deemed to be made in New York. This agreement and all controversies arising from or relating to performance of this agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. The Company hereby irrevocably consents to personal jurisdiction in the Supreme Court of the State of New York in New York County, Commercial Part, or any Federal court sitting in the Southern District of New York for the purposes of any suit, action or other proceeding arising out of this agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company, hereby waives any objection to venue with respect thereto, and hereby agrees that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions. The Company hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Company at its address set forth above, such service to become effective ten (10) days after such mailing. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH MILLER BUCKFIRE'S ENGAGEMENT IS HEREBY WAIVED.

10. This agreement may be executed in counterparts, each of which together shall be considered a single document. This agreement shall be binding upon Miller Buckfire and the Company and their respective successors and assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan). This agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the

Company, or any other person or entity not a party hereto other than the indemnified persons referenced in the Indemnification Provisions contained herein and the Covered Persons referenced above. This agreement (including the Indemnification Provisions) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

11. The Company does not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor is it a prohibited party according to other U.S. government regulatory or enforcement agencies.

12. The Company hereby acknowledges that affiliates of Miller Buckfire engage in the hedge fund and/or principal investment business, which affiliates are separated by ethical walls to prevent the improper sharing of client information. The Company hereby acknowledges and agrees that such affiliates may from time to time have a long or short position in, buy and sell or otherwise effect transactions for their own accounts or for the accounts of investment pools managed by them in the securities, loans or other obligations or instruments of the Company or those of other companies or entities so long as the personnel involved in performing such activities have not received access to the Company's confidential information from Miller Buckfire.

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between Miller Buckfire and the Company.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By: _____
Name: Samuel Greene
Title: Managing Director


Accepted and Agreed to:

STALLION OILFIELD SERVICES LTD.

By: _____
Name: Craig Johnson
Title: Chief Executive Officer

## INDEMNIFICATION PROVISIONS

In connection with the engagement of Miller Buckfire & Co., LLC ("Miller Buckfire") as financial advisor to Stallion Oilfield Services Ltd., the Company hereby agrees to indemnify and hold harmless Miller Buckfire and its affiliates, their respective directors, officers, members, managers, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "indemnified persons"), to the full extent lawful, from and against all losses, claims, damages, liabilities and expenses incurred by them which (A) are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company or (ii) actions or alleged actions taken or omitted to be taken by an indemnified person with the Company's consent or in conformity with the Company's actions or omissions or (B) are otherwise related to or arise out of Miller Buckfire's activities under Miller Buckfire's engagement as financial advisor to the Company. The Company will not be responsible, however, for any losses, claims, damages, liabilities or expenses pursuant to clause (B) of the preceding sentence which are finally judicially determined to have resulted primarily from the gross negligence or willful misconduct of the person seeking indemnification hereunder. For purposes of these indemnification provisions, the term the "Company" has the meaning set forth in the engagement letter, dated as of March 10, 2009, between Miller Buckfire and Stallion Oilfield Services Ltd., of which these indemnification provisions are an integral part.

After receipt by an indemnified person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure so to notify the Company will relieve the Company from any liability which the Company may have hereunder only if, and to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any indemnified person otherwise than under these indemnification provisions. If the Company so elects or is requested by such indemnified person, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Miller Buckfire and the payment of the fees and disbursements of such counsel. In the event, however, such indemnified person reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an indemnified person and the Company, and such indemnified person reasonably concludes that there may be legal defenses available to it or other indemnified persons that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such indemnified person, in either case in a timely manner, then such indemnified person may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for all indemnified persons in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the indemnified person will have the right to participate in such litigation and to retain its own counsel at such indemnified person's own expense. The Company further agrees that it will not, without the prior written consent of Miller Buckfire, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other indemnified person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Miller Buckfire and each other indemnified person hereunder from all liability arising out of such claim, action, suit or proceeding.

The Company agrees that if any indemnification sought by an indemnified person pursuant to these indemnification provisions is held by a court to be unavailable for any reason other than as specified in the second sentence of the first paragraph of these indemnification provisions, then (whether or not Miller Buckfire is the indemnified person), the Company and Miller Buckfire will contribute to the losses, claims, damages, liabilities and expenses for which