## EXHIBIT B

**Greene Declaration**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| STALLION OILFIELD SERVICES LTD., *et al.*,[1] | ) Case No. 09-13562 (BLS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**DECLARATION OF SAMUEL GREENE IN SUPPORT OF THE APPLICATION OF STALLION OILFIELD SERVICES LTD., *ET AL*, FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MILLER BUCKFIRE & CO. LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO STALLION *NUNC PRO TUNC* TO THE PETITION DATE**

I, Samuel Greene, being duly sworn, state the following under penalty of perjury.

1.     I am a Managing Director of the firm Miller Buckfire & Co., LLC ("Miller Buckfire"), which has its principal office in New York, New York. I am authorized to execute this declaration on behalf of Miller Buckfire. Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.

2.     This declaration is being submitted in connection with the proposed employment and retention of Miller Buckfire as financial advisor and investment banker to the above-captioned debtors and debtors in possession (collectively, "Stallion"), to perform services as set forth in Stallion's application to retain Miller Buckfire (the "Application").[2]

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: Stallion Oilfield Services Ltd. (2101); Central Industries, Inc. (3594); Salty's Disposal Wells, LP (0682); Salty's Manufacturing, Ltd. (0679); Stallion Acquisition, LLC (2495); Stallion Heavy Haulers, LP (3203); Stallion Interests, LLC (4416); Stallion Offshore Quarters, Inc. (7410); Stallion Oilfield Construction, LLC (1600); Stallion Oilfield Finance Corp. (7114); Stallion Oilfield Holdings GP, LLC (7889); Stallion Oilfield Holdings, Ltd. (7890); Stallion Oilfield Services, Inc. (8455); Stallion Production Services, LP (2038); Stallion Production, LLC (2040); Stallion Rockies Ltd. (9473); Stallion Solids Control, Inc. (4425); and Stallion Stables, LLC (7522). The location of Stallion's corporate headquarters and the service address for its affiliates is: 950 Corbindale Road, Suite 300, Houston, Texas 77024.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

## Miller Buckfire's Qualifications

3.    Miller Buckfire is an independent firm that provides strategic and financial advisory services in large-scale corporate restructuring transactions.   Miller Buckfire is principally owned and controlled by the employees of Miller Buckfire.  Miller Buckfire currently has approximately 75 employees.

4.    Miller Buckfire's professionals have extensive experience in providing financial advisory and investment banking services to financially distressed companies and to creditors, equity holders, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court.  For instance, Miller Buckfire's professionals are providing or have provided financial advisory, investment banking, and other services in connection with the restructuring of numerous companies:   Acterna Corporation; Aerovías Nacionales de Colombia S.A.; Allied Holdings, Inc.; Amtrol Inc.; Anchor Danly Company; Applied Extrusion Technologies, Inc.; AT&T Latin America; Aurora Foods Inc.; Autocam Corporation; Avado Brands, Inc.; Birch Telecom, Inc.; Black Diamond Mining Company, LLC; Bruno's Inc.; Burlington Industries; Calpine Corporation; Cambridge Industries; Carmike Cinemas; Celotex Corporation; Centerpoint Energy; Citation Corporation; CMS Energy Corporation; Criimi Mae, Inc.; CTC Communications; Cygnus Business Media, Inc.; Dana Corporation; Delta Air Lines, Inc.; Dow Corning Corporation; Drypers, Inc.; Dura Automotive Systems, Inc.; EaglePicher Holdings Inc.; Exide Technologies; Eurotunnel Group; Favorite Brands International Inc.; FLYi, Inc.; Foamex International; Focal Communications Corporation; FPA Medical Management; Gate Gourmet; General Growth Properties, Inc.; Grand Union Co.; Greatwide Logistics Services, Inc.; Grupo TMM; Hines Horticulture, Inc.; Horizon Natural Resources Company; Huntsman Corporation; ICG Communications; ICO Global Communication, Ltd.; IMPATH Inc.; Interstate Bakeries Corporation; J.L. French Automotive

2

Castings; Kmart Corporation; Laidlaw, Inc.; Lear Corporation; Level (3) Communications; Loewen Group; McLeodUSA; Meridian Technologies Inc.; Mervyn's Inc.; Micro Warehouse; Mirant Corp.; Montgomery Ward & Co.; National Airlines; Oakwood Homes; Pacific Crossing Limited; Pathmark Stores, Inc.; Pegasus Satellite Communications; PennCorp Financial Group, Inc.; Pioneer Companies; PSINet; Polaroid Corporation; Polymer Group, Inc.; Progressive Molded Products Inc.; Questex Media Group, Inc.; The Reader's Digest Association, Inc.; SI Corporation; The Spiegel Group; Sunbeam Corporation; Stolt-Nielsen S.A.; Stolt-Offshore S.A.; TECO Energy; Trans World Airlines; U.S. Office Products; and Women First Healthcare, Inc.

5.     Stallion seeks to retain Miller Buckfire as its financial advisor and investment banker because, among other things, Miller Buckfire has extensive experience and an excellent reputation for providing high quality financial advisory and investment banking services to debtors and creditors in bankruptcy reorganizations and other restructurings.

6.     On March 10, 2009, Stallion engaged Miller Buckfire to provide general investment banking and financial advice in connection with Stallion's attempts to complete a strategic restructuring, reorganization, and/or recapitalization and, if necessary, to prepare for the commencement of these chapter 11 cases.

7.     Since March 10, 2009, Miller Buckfire has provided the following services, among others, to Stallion in connection with its restructuring efforts:

    a.     familiarized itself with Stallion's assets and operations;

    b.     analyzed Stallion's current liquidity and projected cash flows;

    c.     prepared various analyses regarding Stallion's liquidity, covenants, debt capacity, and valuation;

    d.     examined and assisted in the implementation of potential strategic alternatives to de-leverage Stallion's balance sheet;

3

e. developed materials for, and participated in, multiple meetings of Stallion's board of directors;

f. assisted Stallion and its other professionals in the development of materials for, and participated in, numerous meetings with key creditor and equity constituents;

g. engaged in negotiations with Stallion's secured lenders, unsecured lenders, and unsecured note holders regarding the terms of a potential balance sheet restructuring;

h. assisted Stallion in the identification of potential alternative financing sources; and

i. assisted Stallion in evaluating their restructuring alternatives.

8. In providing professional services to Stallion in connection with these matters, Miller Buckfire has worked closely with Stallion's management and other professionals and has become well-acquainted with Stallion's businesses, capital structure, financial affairs, and related matters. The experience Miller Buckfire gained before the Petition Date will facilitate the provision of services required by Stallion in these chapter 11 cases. Stallion believes that Miller Buckfire is both well-qualified and uniquely able to represent it in these chapter 11 cases in an efficient and timely manner.

## Services to Be Provided

9. In accordance with the terms of the Engagement Letter, at Stallion's request and direction, Miller Buckfire will perform the following financial advisory and investment banking services, among others, to the extent they are desired or necessary:[3]

a. review and analyze Stallion's business, operations, properties, financial condition, and prospects;

---

[3] The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

4

b.    provide general financial advisory and investment services, including, if Stallion determines to undertake an Amendment, Restructuring, and/or Financing, advising and assisting Stallion in structuring and effecting the financial aspects of such a transaction or transactions;

c.    provide financial and valuation advice and assistance to Stallion in developing and seeking approval of a plan of reorganization;

d.    provide financial advice and assistance to Stallion in structuring any new securities to be issued under a restructuring plan;

e.    assist Stallion and/or participate in negotiations with entities or groups affected by a restructuring plan;

f.    assist Stallion with administrative obligations arising out of the chapter 11 filing including preparing management for any organizational and ongoing meeting of creditors; and

g.    participate in hearings before the Bankruptcy Court with respect to the matters upon which Miller Buckfire has provided advice.

10.    Miller Buckfire has stated its desire and willingness to act in these chapter 11 cases and to render the necessary professional services as financial advisor and investment banker for Stallion. Stallion requires Miller Buckfire's advice and services in order to maximize the value of its estates. All of the services that Miller Buckfire has and will provide to Stallion will be undertaken at Stallion's request and will be appropriately directed by Stallion as to avoid duplicative efforts among the professionals retained in these chapter 11 cases.

### Professional Compensation

11.    Miller Buckfire's decision to continue with this engagement to advise and assist Stallion is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and compensated for its services and reimbursed for the expenses it occurs in accordance with its customary billing practices.

12.    Miller Buckfire intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases,

K&E 15821941.1

subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines"), and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Engagement Letter (the "Fee Structure").

13.     As more fully described in the Engagement Letter, and subject to the Court's approval, Stallion has agreed to pay the following compensation to Miller Buckfire in consideration for services to be performed in these chapter 11 cases:[4]

a.      a "Monthly Advisory Fee" of $175,000; *provided, however,* that one-half of each such Monthly Advisory Fee beginning after the fifth month of Miller Buckfire's engagement shall be credited against any Restructuring Transaction Fee;

b.      an "Amendment Fee" of $2,000,000 upon a covenant amendment to Stallion's unsecured bridge term loan or existing senior credit facility on or prior to December 31, 2009, which shall be due and paid by Stallion upon the execution and delivery of any such amendment; *provided, however,* that one-half of the Amendment Fee shall be credited against any Restructuring Transaction Fee;

c.      a "Restructuring Transaction Fee" equal to $3,000,000, upon the consummation of a Restructuring;[5] and

d.      "Financing Fees" in accordance with the following schedule:

i.      1% of the gross proceeds of any indebtedness that is secured by a first lien;

ii.     3% of the gross proceeds of any indebtedness that (x) is secured by a second or more junior lien, (y) is unsecured and/or (z) is subordinated; and

---

[4]     Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed in the Engagement Letter. To the extent that the summary provided herein and the Engagement Letter are inconsistent, the Engagement Letter shall control in all respects.

[5]     The Engagement Letter provides for a Restructuring Transaction Fee of $6,000,000, 50% of which was earned and paid prior to the Petition Date pursuant to the Engagement Letter. Accordingly, $3,000,000 remains to be paid, subject to applicable crediting and approval by the Court.

K&E 15821941.1

iii. 5% of the gross proceeds of any equity or equity-linked securities or obligations;

*provided, however,* that, in each case, no Financing Fee shall be payable on any such proceeds to the extent actually funded by Riverstone Holdings, LLC or Wayzata Investment Partners, LLC, and their respective affiliates.

14. In addition, Stallion has agreed to reimburse Miller Buckfire for its reasonable expenses incurred in connection with the provision of services, such as travel and other reasonable out-of-pocket expenses (including all reasonable fees, disbursements, and other charges of counsel and other consultants and advisors to be retained by Miller Buckfire).

15. Stallion submits that Miller Buckfire has obtained valuable institutional knowledge of Stallion's businesses and financial affairs as a result of providing services to Stallion prior to the Petition Date and that Miller Buckfire is both well-qualified and uniquely able to perform these services and assist Stallion in these chapter 11 cases. Moreover, Stallion believes that Miller Buckfire's services will assist Stallion in a successful outcome of these chapter 11 cases.

16. The Fee Structure is consistent with Miller Buckfire's normal and customary billing practices for comparably sized and complex cases, both in and out of court, involving the services to be provided in these chapter 11 cases.

17. Miller Buckfire and Stallion believe that the compensation arrangements provided for in the Engagement Letter and generally described above are both reasonable and market-based. In determining the level of compensation to be paid to Miller Buckfire and its reasonableness, Stallion compared Miller Buckfire's proposed fees with the range of investment banking fees in other large and complex chapter 11 cases. Stallion found Miller Buckfire's proposed fees to be reasonable and within the range of other comparable transactions.

K&E 15821941.1

18. To induce Miller Buckfire to do business with Stallion in bankruptcy, the compensation structure described above was established to reflect the difficulty of the extensive assignments Miller Buckfire expects to undertake and the potential for failure.

19. Pursuant to Local Bankruptcy Rule 2016-2(d), in a motion for compensation and reimbursement of expenses, activities must be billed in tenths of an hour. Although Miller Buckfire does not charge for its services on an hourly basis, Miller Buckfire will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases. Miller Buckfire, however, requests that it be permitted to file time records in one-half (.5) hour increments. Accordingly, by this Application, Stallion is seeking on behalf of Miller Buckfire a waiver, pursuant to Local Bankruptcy Rule 2016-2(g), of the requirement to bill activities in one-tenths (.1) of an hour to permit Miller Buckfire to submit its time records in half-hour increments.

20. Miller Buckfire's strategic and financial expertise as well as its capital markets knowledge, financing skills, and restructuring capabilities, some or all of which may be required by Stallion during the term of Miller Buckfire's engagement hereunder, were important factors in determining the Fee Structure, and the ultimate benefit to Stallion of Miller Buckfire's services hereunder cannot be measured by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services.

21. In addition, the Fee Structure has been agreed upon by the parties on an arm's-length basis in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and its professionals hereunder, and in light of the fact that such commitment may foreclose other opportunities for Miller Buckfire and that the actual time

K&E 15821941.1

and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from week to week and month to month.

22. In sum, in light of the foregoing and given the numerous issues that Miller Buckfire may be required to address in the performance of its services hereunder, Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature both out-of-court and in a chapter 11 context, Stallion believes that the Fee Structure is fair and reasonable and market-based under the standards set forth by section 328(a) of the Bankruptcy Code.

23. Accordingly, as more fully described below, Stallion believes that the Court should approve Miller Buckfire's retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Miller Buckfire's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code, or otherwise.

24. Miller Buckfire has not shared or agreed to share any of its compensation from Stallion with any other person, other than as permitted by section 504 of the Bankruptcy Code.

25. Prior to the Petition Date, Miller Buckfire received total monthly fees of $1,400,000, pursuant to section 2(a) of the Engagement Letter, $3,000,000 representing 50% of the Restructuring Transaction Fee pursuant to paragraph 2(c) of the Engagement Letter and $33,741.55 for reimbursement of expenses incurred from March 10, 2009, through the Petition Date. To the extent that Miller Buckfire has received reimbursement for expenses in excess of the amount actually incurred, Miller Buckfire will credit such excess against future incurred

9

expenses. In total, Miller Buckfire received $4,433,741.55 prior to the Petition Date. The payments received before the Petition Date are described in more detail below:

| Date | Invoiced Amount | | | Amount Received | | |
|---|---|---|---|---|---|---|
| | Fees | Expenses | Total | Fee | Expenses | Total |
| 03/10/09 | $175,000 | $229.06 | $175,229.06 | $175,000 | $229.06 | $175,229.06 |
| 04/10/09 | $175,000 | $1,997.26 | $176,997.26 | $175,000 | $1,997.26 | $176,997.26 |
| 05/10/09 | $175,000 | $3,494.42 | $178,494.42 | $175,000 | $3,494.42 | $178,494.42 |
| 06/10/09 | $175,000 | $2,590.93 | $177,590.93 | $175,000 | $2,590.93 | $177,590.93 |
| 07/10/09 | $175,000 | $1,630.29 | $176,630.29 | $175,000 | $1,630.29 | $176,630.29 |
| 08/10/09 | $175,000 | $16,724.09 | $191,724.09 | $175,000 | $16,724.09 | $191,724.09 |
| 09/10/09 | $175,000 | $881.85 | $175,881.85 | $175,000 | $881.85 | $175,881.85 |
| 10/13/09 | $3,175,000 | $6,193.65 | $3,181,193.65 | $3,175,000 | $6,193.65 | $3,181,193.65 |

### Miller Buckfire's Disinterestedness

26. Stallion has numerous creditors, equity holders, and other parties with whom it maintains business relationships. In connection with its proposed retention by Stallion in these chapter 11 cases, Miller Buckfire undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to Stallion. To check and clear potential conflicts of interest in these chapter 11 cases, Miller Buckfire reviewed its client relationships to determine whether it had any relationships with the following entities (collectively, the "Potential Parties in Interest"):

    a.    Stallion;

    b.    significant secured and unsecured lenders;

    c.    significant senior note holders;

    d.    significant equity holders;

    e.    Stallion's largest unsecured trade creditors;

K&E 15821941.1

f.      significant customers;

g.      Stallion's insurance providers;

h.      Stallion's landlords, lessors, and counterparties to significant executory contracts;

i.      Stallion's present and former officers and directors;

j.      parties to significant litigation with Stallion;

k.      United States Trustee employees;

l.      the attorneys and other professionals that Stallion has identified for employment in these chapter 11 cases;

m.      other Professionals Retained by Stallion; and

n.      other significant parties in interest.

27.      The identities of the Potential Parties in Interest were provided to Miller Buckfire by Stallion.

28.      Miller Buckfire is an independent and privately-owned investment bank and financial advisory firm. Miller Buckfire is wholly owned by MB Advisory Group, LLC ("MB Advisory"), a limited liability company organized under the laws of the State of Delaware. The principal owner of MB Advisory is MB Capital Co., LLC ("MB Capital"), which is also a Delaware limited liability company. MB Capital owns 90% of the membership interests in MB Advisory, and Sal. Oppenheim North America Corporate Finance Holding LLC (the "Investor") owns the remaining 10%. The Investor is a Delaware limited liability company formed in 2007 by Sal. Oppenheim Jr. & Cie.KGaA ("Oppenheim"), a leading European private bank that provides investment banking and asset management services in various countries in Europe. In March 2007, at the time the Investor acquired its interest in MB Advisory, Miller Buckfire also entered into an agreement (the "Strategic Collaboration Agreement") with Oppenheim. Pursuant to the Strategic Collaboration Agreement, Miller Buckfire will work with Oppenheim to provide

11

financial restructuring services to clients located in Germany, Austria, and Switzerland. Miller Buckfire and Oppenheim also will work together on potential cross-border mergers and acquisitions transactions and may from time to time act as joint advisors in such mergers and acquisitions transactions. However, the Strategic Collaboration Agreement does not apply to the provision of investment banking and financial advisory services for restructuring purposes to clients in the United States.

29. The Investor and Oppenheim will have no involvement in Miller Buckfire's provision of services in these chapter 11 cases, and they will have no access to any of Miller Buckfire's records or other non-public information relating to this case. Given their limited relationships, Miller Buckfire does not have access to Oppenheim's conflicts databases for purposes of the disclosures being made herein. Miller Buckfire has, however, reviewed the lists of parties in interest provided by Stallion to determine if Oppenheim or any affiliates of Oppenheim known to Miller Buckfire (based on a limited review of publicly available information) are parties in interest in these chapter 11 cases. To the best of my knowledge, information and belief, none of the parties in interest identified to Miller Buckfire are affiliated with Oppenheim or its affiliates.

30. Miller Buckfire does not believe that the Investor's minority stake in MB Advisory, the strategic relationship between Miller Buckfire and Oppenheim or Oppenheim's limited connections with potential parties in interest, are material to Miller Buckfire's work in this case.

31. An affiliate of Miller Buckfire serves as manager for an investment fund (the "Managed Fund"). The name of the Managed Fund is Marblegate Special Opportunities Master Fund, L.P. and the name of the manager of the Managed Fund is Marblegate Asset Management,

12

LLC (the "Manager"). Miller Buckfire and the Manager are affiliated in that both entities are owned and controlled by MB Advisory and its parent company MB Capital.

32. The Managed Fund is intended principally for investments by third parties unrelated to Miller Buckfire. However, such investors also may include financial institutions (some of which may be parties in interest in these chapter 11 cases). In addition, MB Capital is invested in the Managed Fund, and certain of the employees of Miller Buckfire have invested in the Managed Fund. MB Capital also is owned by the employees of Miller Buckfire. Accordingly, by virtue of such ownership, the employees of Miller Buckfire indirectly own an economic stake in the Managed Fund and its Manager.

33. As part of its regular business the Managed Fund may invest from time to time in claims or securities of distressed companies, which may include or be related to clients of Miller Buckfire or parties in interest in the chapter 11 cases. In this case, Miller Buckfire understands, based upon the list of lenders provided by the Agent for the unsecured bridge facility and the Potential Parties in Interest List, that the Managed Fund holds a portion of Stallion's unsecured bridge facility. To Miller Buckfire's knowledge, the Managed Fund has not played an active role in these chapter 11 cases.

34. Miller Buckfire has instituted compliance procedures that are designed to separate the investment banking and financial advisory services provided by Miller Buckfire from the investment activities of the Managed Fund and the Manager. More particularly:

    a.  A strict physical separation is maintained between Miller Buckfire employees and persons involved with the Managed Fund and the Manager, who use separate facilities, separate computing systems, and are located in separate offices;

    b.  Employees working in connection with these chapter 11 cases have no control over or involvement in investment decisions made for the Managed Fund, and the Manager maintains investment control over all investment decisions;

13

c.   No confidential information concerning Stallion is permitted to be communicated to any persons working for the Managed Fund;

d.   Similarly, employees of Miller Buckfire working in connection with these chapter 11 cases are not permitted to have access to confidential information in possession of the Managed Fund or the Manager; and

e.   Employees working in connection with these chapter 11 cases do not receive information about the investments made by the Managed Fund unless the compliance officer has determined that such disclosure is permitted and has allowed such disclosure.

35.   Miller Buckfire's compliance office and Miller Buckfire's general counsel are entitled to obtain information about the investments of the Managed Fund, but only in the performance of their compliance and legal supervisory duties.  In addition, internal computer support staff provides hardware and software support for both Miller Buckfire and the Managed Fund, but such staff is not involved in the investment banking and financial advisory services that Miller Buckfire provides or in the investments that the Managed Fund makes.

36.   Miller Buckfire and the Managed Fund have conducted their businesses in strict compliance with the foregoing ethical wall procedures. The Managed Fund is a separate entity with separate personnel whose operations are independent from the operations of Miller Buckfire.  Accordingly, notwithstanding the fact that the Managed Fund has held and may still own a portion of Stallion's debt instruments, given the strict separations of the organizations and the compliance procedures described above, Miller Buckfire does not believe that the relationships outlined above constitute adverse interests or render Miller Buckfire not disinterested in these chapter 11 cases.

37.   A number of business executives are members of an informal strategic advisory committee (the "Strategic Committee") of MB Advisory, which is the parent company of Miller Buckfire. The Strategic Committee is an informal group of business executives who have agreed to consult with and advise Miller Buckfire's parent generally on the strategic direction of the

14

Miller Buckfire company group and future business trends.  The members of the Strategic Committee have no direct financial stake in Miller Buckfire engagements and no role in the management of Miller Buckfire.  They have not been consulted concerning any matter relating to these chapter 11 cases, nor will they be so consulted in the future.  Members of the Strategic Committee, and entities for whom they work, may have relationships with creditors or other parties in interest in these chapter 11 cases.  However, in light of the limited role of the Strategic Committee (and the fact that its members play no role in these chapter 11 cases), Miller Buckfire is not collecting and providing detailed information regarding such possible relationships.

38.  As part of its diverse practice, Miller Buckfire appears in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in these chapter 11 cases.  Further, Miller Buckfire has in the past, and may in the future, be represented by several attorneys and law firms, some of whom may be involved in these proceedings.  In addition, Miller Buckfire has been in the past, and likely will be in the future, engaged in matters unrelated to Stallion or these chapter 11 cases in which it works with or against other professionals involved in these chapter 11 cases.  Based on our current knowledge of the professionals involved in these chapter 11 cases, and to the best of my knowledge, none of these business relations constitute interests adverse to Stallion.

39.  To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I nor Miller Buckfire nor any of its professional employees has any connection with Stallion, its creditors, the United States Trustee or any other Potential Parties in Interest in these chapter 11 cases or their respective attorneys or accounts, except as follows:

K&E 15821941.1

a.  prior to the commencement of these chapter 11 Cases, Miller Buckfire's professionals performed professional services for Stallion;

b.  Stallion has many creditors. From time to time, Miller Buckfire may perform or may have performed services for, or maintained other commercial or professional relationships with, certain creditors of Stallion and various other parties that are adverse to Stallion, in each case in matters unrelated to these chapter 11 cases;

c.  Miller Buckfire has been in the past, and in some cases is currently, involved in unrelated matters with certain creditors of Stallion, including, but not limited to, AIG, Apollo Management, Bank of New York, Barclays Bank, Bank of America/Merrill Lynch, Citigroup, Credit Suisse, Davidson Kempner, Deutsche Bank, General Electric Capital Corp., Goldman Sachs, Guggenheim Partners, JPMorgan Chase Bank N.A., Monarch, Royal Bank of Scotland, Sankaty, UBS AG, Wayzata Investment Partners, Western Asset Management and their respective affiliates, among others;

d.  Miller Buckfire is advising a group of creditors in the Idearc chapter 11 cases (the "Idearc Official Committee of Unsecured Creditors"), including certain affiliates of Ahab Capital Management and MatlinPatterson. The representation of the Idearc Official Committee of Unsecured Creditors concerns matters unrelated to these chapter 11 cases;

e.  Miller Buckfire advised a group of creditors in the Lenox Group Inc. chapter 11 cases (the "Lenox Creditors"), including JPMorgan and Bank of New York Mellon. The representation of the Lenox Creditors concerns matters unrelated to these chapter 11 cases and concluded in early 2009;

f.  Miller Buckfire advised a group of creditors in the EaglePitcher chapter 11 cases (the "EaglePitcher Committee"), including JPMorgan. The representation of the EaglePitcher Committee concerns matters unrelated to these chapter 11 cases and concluded in 2006;

g.  Miller Buckfire advised a group of creditors in the Mirant Corp. chapter 11 cases (the "Mirant Committee"), including Citigroup and Deutsche Bank. The representation of the Mirant Committee concerns matters unrelated to these chapter 11 cases and concluded in 2006;

h.  Miller Buckfire has been in the past, and in some cases is currently, advising certain unsecured creditors and lease counterparties of Stallion. The representation of these certain unsecured creditors and lease counterparties concerns matters unrelated to these chapter 11 cases; and

i.  Henry S. Miller's daughter is employed by Kirkland & Ellis LLP on a full-time basis.

K&E 15821941.1

40. From time to time, Miller Buckfire also may have had dealings (either as co-advisers or in another capacity) on other unrelated matters with certain of the other professionals who are providing, or are expected to provide, services in these chapter 11 cases, including, without limitation:

   a. Kirkland & Ellis LLP (Stallion's proposed counsel);

   b. AlixPartners LLC;

   c. Richards, Layton & Finger, P.A.;

   d. Broadpoint.Gleacher;

   e. Vinson & Elkins LLP;

   f. Paul, Weiss, Rifkind, Wharton & Garrison LLP;

   g. Latham & Watkins LLP;

   h. Morgan, Lewis & Bockius LLP; and

   i. Epiq Bankruptcy Solutions, LLC.

41. To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, Miller Buckfire has not been retained to assist any entity or person other than Stallion on matters relating to, or in direct connection with, these chapter 11 cases. If Miller Buckfire's proposed retention by Stallion is approved by the Court, Miller Buckfire will not accept any engagement or perform any service for any entity or person other than Stallion in these chapter 11 cases. Miller Buckfire will, however, continue to provide professional service to entities or persons that may be creditors of Stallion or Potential Parties in Interest in these chapter 11 cases, provided that such services do not relate to, or have any direct connection with, these chapter 11 cases or Stallion.

42. Insofar as I have been able to determine after reasonable inquiry, Miller Buckfire and the employees of Miller Buckfire that will work on this engagement do not hold or represent

17

any interest adverse to Stallion or its estates, and Miller Buckfire is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Miller Buckfire, its professionals and employees:

    a.    are not creditors, equity security holders, or insiders of Stallion;

    b.    were not, within two years before the date of filing of these chapter 11 petitions, a director, officer, or employee of Stallion; and

    c.    do not have an interest materially adverse to Stallion, its respective estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in Stallion, or for any other reason.

43.    I am not related or connected to and, to the best of my knowledge after reasonable inquiry, no other professional of Miller Buckfire who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the District of Delaware, any of the District Judges for the District of Delaware, the United States Trustee for the District of Delaware, or any employee in the Office of the United States Trustee for the District of Delaware.

44.    To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, none of the employees of Miller Buckfire working on this engagement on Stallion's behalf has had, or will have in the future, direct contact concerning these chapter 11 cases with Stallion's creditors, other parties in interest, the United States Trustee, or anyone employed in the Office of the United States Trustee other than in connection with performing financial advisory and investment banking services on behalf of Stallion.

45.    If Miller Buckfire discovers any additional information that requires disclosure, Miller Buckfire will promptly file a supplemental declaration with the Court.

K&F 15821941.1

## Indemnification

46.     The Engagement Letter further provides that Stallion will indemnify, hold harmless, and defend Miller Buckfire and its affiliates and its respective directors, officers, members, managers, shareholders, employees, agents, and controlling persons and its respective successors and assigns (collectively, the "Indemnified Parties") under certain circumstances (such indemnification obligation being referred to as the "Indemnification Provisions"), which provisions are attached to and made a part of the Engagement Letter.   Notwithstanding the Indemnification Provisions, such indemnity shall be modified to the extent set forth below (the "Modified Indemnification Provisions"):

a.      Subject to the provisions of subparagraphs (c) and (d) below, Stallion is authorized to Indemnify, and shall indemnify, Miller Buckfire, in accordance with the Engagement Letter and to the extent permitted by applicable law, for any claim arising from, related to, or in connection with Miller Buckfire's performance of the services described in the Engagement Letter;

b.      Miller Buckfire shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services other than the services provided under the Engagement Letter, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

c.      Notwithstanding anything to the contrary in the Engagement Letter, Stallion shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which Stallion alleges the breach of Miller Buckfire's contractual obligations under the Engagement Letter unless the Court determined that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter as modified by this Order;

19

d.  If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, Miller Buckfire believes that it is entitled to the payment of any amounts by Stallion on account of Stallion's indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by the Proposed Order), including, without limitation, the advancement of defense costs, Miller Buckfire must file an application before this Court, and Stallion may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution or reimbursement, and not a provision limiting the duration of Stallion's obligation to indemnify Miller Buckfire; and

e.  The Engagement Letter is amended to delete the proviso to the first sentence of the third paragraph of the Indemnification Provisions.

47.  Miller Buckfire submits that the Indemnification Provisions, as modified by the Proposed Order, are standard provisions, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on indemnification provisions that are customary in Delaware and other jurisdictions.

48.  Miller Buckfire believes that the Modified Indemnification Provisions are customary and reasonable for financial advisory and investment banking engagements, both out of court and in chapter 11 cases. The Modified Indemnification Provisions are similar to other indemnification provisions that have been approved by this Court and other bankruptcy courts.

49.  The terms and conditions of the Engagement Letter, including the Modified Indemnification Provisions, were negotiated by Stallion and Miller Buckfire at arm's-length and in good faith. Miller Buckfire submits that the Indemnification Provisions contained in the Engagement Letter, as modified by the Proposed Order, viewed in conjunction with the other terms of Miller Buckfire's proposed retention, are reasonable.

K&E 15821941.1

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 30, 2009

By: _____
Samuel Greene
Managing Director
Miller Buckfire & Co., LLC